Robert Strode and Marie Strode, Defendant's Affidavits, arguing on behalf of the Appellants, Mr. Douglas W. Graham. Arguing on behalf of the Affidavits, Mr. Allen Allen. Thank you. Mr. Graham, you may proceed. Well, may it please the Court, I represent plaintiffs, and largely what's at issue here is a counterclaim. My people bought a piece of real estate. I'll just touch on the facts. Could you pull that microphone up to your face? It was pulled down by a... A shorter person? Yes, a shorter person. Okay. But he had a long argument. Okay. This is going to be a short statement by me. Everything I can think of to argue is in the briefs. And there are plenty of warnings that we should not get up here and talk about what we've already said in the briefs. But I'm giving you my slant on the case here. I've got some people that bought a piece of real estate. Their next-door neighbor has a driveway that comes 10 feet over onto their property. Their own attorney closing the purchase did not notice on the plat. So we have an issue of what to do about it. And counsel and I have been on good terms with unable to agree and unable to get our clients to agree on what to do. So you suggested, I think, in the trial court that maybe an easement would have been the appropriate resolution. From the beginning, I've felt that. And we have talked about easement, counsel and I, but they want a 100-year easement. And that's going to have the same effect as just granting them the property. The easement would expire long after they've expired. We do agree. I mean, adverse possession, we all learned it in law school. And here, at least on its face, all the elements have been satisfied. Would you agree with the overwhelming majority of courts that with respect to adverse possession, the maxim actions speak louder than words applies as opposed to just words alone? Well, I have not contemplated that. There are actions on both parties here. My people, of course, have immediately acted and want the encroachment removed. The actions on the other side were accidental as far as we can tell. We have in the record a very detailed affidavit from the man who actually put the driveway in. There was no intent to trespass. No intent. What has been our major thrust from my side of it is that nobody knew this was happening. Nobody knew, incredible as it may sound. Again, we're familiar with the record. It's fairly short. Just briefly, do you have any case law to support your argument that in order to gain by adverse possession, to gain title by adverse possession, the intruding neighbor must have knowledge that he or she is a trespasser? That is one of the interesting parts of this case. I'm going to be brief up here, but the one thing I did want to talk about is exactly that point. For a century, accidental trespasses were not sufficient to vest rights by adverse possession. You had to have an intent by the person to be on somebody else's property and use it. And it had to be open and notorious and all that. They don't have that here. Why do you say we do not have that here when it's clear that the driveway was possessed by and used by exclusively by the property owners? Ah, yes, but there was no way to tell that it was on my people's property. There are no fences. There are no lines. There is nothing. Without a survey, there's no way to tell that that's a trespassing driveway. Again, there is no authority for that argument, though. Oh, sure. What argument? The Supreme Court has considered accidental trespasses, and for a long, long time, those were not sufficient to vest property by ownership by adverse possession. But they have a case where a fellow bought property, and there were marks, there were trees, shrubs, a line, and he was told when he bought the property that his property went out there. So he assumed that that was right, and he was wrong. He did not intend to trespass on anybody's property, and it wasn't particularly open and notorious. The Supreme Court of Illinois, in a case called Joyner, looked at the law about accidental trespasses and changed the law of Illinois to favor this fellow. What the law? I'm sorry. You said what? They changed the law. It's a new law, Joyner v. whoever was sitting there. Jansen. And it's really the seminal case at this point on accidental trespasses and adverse possession. But it's not automatic. All the cases in the past have said that you can't have a secret. Which is it supposed to be? The criteria, the factor, the touchstone, the benchmark is accidental trespass, or is it how someone deals with the property as if they were an owner? Well, it's both. In this case, in the Joyner case, there were marks. It looked perfectly clear to anybody and certainly to whoever owned the property. It really did appear to me that that was the edge of his property, but it wasn't. He was there trespassing accidentally. It wasn't an open and notorious trespass that would give notice to the owner. But when it was surveyed, they found that he was using more land than he actually owned. The Supreme Court said this is part of a rule that says that the statute doesn't run in secret. There are no secret trespasses. That had been the rule in Illinois all the way up to this Joyner case. Now, in Joyner, the Supreme Court changed the law, and they were very clear about how the law stands across the country. And they looked in other jurisdictions and said the majority now, in this modern day, will grant adverse possession rights to somebody who accidentally trespasses, but there has to be some indication, there must be some reason that the trespass occurs. There has to be a mark or something that would make it look like he was on his own property. The idea being that he had perhaps improved it or used it or done things with it, and should not lose it because of his error. Isn't that what happened here with the actual black copying of the property? No, this fellow who gave the affidavit contained within the affidavit shows his plans. He even shows a diagram of the driveway, and it shows a property line, and shows his driveway exactly as it was constructed, but on his own property. And that's not where he put it. Now, he was apparently a do-it-yourself guy. Well, when the house was constructed, the driveway that was prepared, probably to move equipment in and out, was gravel or rock. Originally, yes. And then once the house was completed, everything was done, the pool was in, he black tops it. He didn't move it back onto his property. I don't know where the pool, I don't know when the pool went in, but there was a pool, and he did later, not much later, do black top on the driveway. But he put it right where the gravel was, and where he was working at all times was over the property line. Now, it's reasonable to understand that he did not know he was across the property line. Why does that matter? Well, for one thing, traditionally, adverse possession had to be adverse. It had to be intentional. It had to be atrocious, really, a trespass. It never had to be trespassing with the knowledge of the trespasser. He didn't have to know that he was trespassing for adverse possession. That's not what the cases say. What case says that? I can't tell you off the top of my head, but it's in the brief. I have cited it in the brief. They're very clear that adverse possession rights do not... Is Joyner the precedent that we're supposed to deal with, or is there a newer case? The best case, I think, is the Joyner case. They really got into this business about when, if ever, an accidental trespass can turn into a property ownership. So... Didn't Joyner say something to the effect that it seems strange that someone who was unaware of the trespass would not obtain title to property, whereas someone who knowingly trespassed could? Yeah, precisely. That's why they reversed the trial court. The intent of the adverse possessor or the knowledge is not as important as what his actions are or her actions are or its actions are relative to how the property is dealt with. Well, the law has always been that the statute for adverse possession does not run on the sly. On the what? On the fly? On the sly. I mean, it takes 20 years to get the right. When you said sly, S-O-I. Sly, S-O-I, yes. Well, isn't that what open and notorious relates to? Whether or not someone is surreptitiously or clandestinely in the dark of night going in and building fences and doing things that during the day might place the real owner in a knowledge that somebody is attempting to encroach? This case is unusual because the land here, there's no way that this encroachment would be known to the encroachers or the encroached without a survey. And the first survey to show it? Why is the survey relevant when all the other elements of adverse possession are established? That's what you have to prove to show that the, to even make a claim. You have to show that the driveway was not on your own property, that you built it over on your neighbor's property. The survey showed that. Well, for proceedings in court, of course that's true when you're trying to acquire title by adverse possession. But in Joyner, the court said, to hold it because the possessor knows or should know that the record title is in another title that precludes any possibility of the possessor's title being adverse is the antithesis of the doctrine of adverse possession as it existed in the state of Illinois. That's why the good faith type claiming title is, of course, required by the statutory provisions relating to seven year under color title. But it's not relevant to the 20 year doctrine. That's why they considered the laws in the other states and they made an exception for Illinois. Now, if if in this case there were some sort of a mark or or trees or a fence line that could be traced and it was over that line. Or if it was within that line and that line was false. That's what Joyner is about. But it has to have that sort of it has to have those facts. Well, you have a driveway. Yes. And you have the edge of the driveway. Yes. And you have photographs that have been taken, the aerial photographs over the years. The driveway has never changed. It's been used exclusively by the owners of that property. That's true. That's true. But it has to be adverse. And we don't have that here. Well, what is the definition of adverse for purposes of adverse possession? Knowing that you're on somebody else's property. That's what that's what's adverse is doing your using their property. Part of it, obviously, only 10 feet of it here. But using somebody else's property as your own, you have to have some idea about it. So anyway, the adversity just wasn't there. The guy who put the driveway in, the owner of the house, put the driveway in himself. He's a do-it-yourselfer, and I sympathize with that. But he didn't put it where he thought he was putting it. And for a good reason, there's no way to know exactly where his property line is. He put it where he thought his property line was, and it wasn't. Or he just guessed. There's nothing in his affidavit that says that he knew he was getting pretty close to the property line or maybe he wasn't sure that it was right on his side. Nothing like that. His affidavit says, I put the driveway in, and there it is. Okay, that's my time. Any other questions? No. Thank you, sir. We have an opportunity to make rebuttal. All right, thank you. Mr. Powers, you may proceed. Good morning, Your Honors. May it please the Court, my name is Adam Powers, and I represent the Applebees, the Schroeders in this matter. Since we're going on idioms of law school, the one that stuck in my mind as I sat here this morning was possessions nine-tenths of the law. It truly is today. What about the other ten? I don't know. But 90%, whether we're talking sports or anything else, usually rules the day. Certainly it's a majority. In this case, the possession is the driveway. Counsel argues that in order for possession to be adverse to the title holder, he has to have knowledge. Is there any authority for that proposition under Illinois law? I'm not aware of any authority under Illinois law. I'm aware of past cases that basically said, look, you go into the intent or mindset and that just muddies everything because whether or not you're trying to adversely possess or not possess, it's the actions. And the actions in this case were laying asphalt. There's not a fence, as the appellant seems to always go back to or hit on the Joiner case. In Joiner, he has a point. There was a row of trees and it was an area that had been landscaped and taken care of by the adverse possessor. And here you don't have that. You don't have anything that would delineate the property line other than the fact that the driveway is over the line. I respectfully disagree wholeheartedly from the standpoint that the line here is the edge of the asphalt. And that couldn't be more clear in terms of this is what's been taken care of. This is what's either been shoveled or anything else like that. It's unmoving from the time it's installed in 1978, charitably, whether it was 77 or 78, all the way through today. It hasn't moved. It hasn't changed. And that's the true key in why the affidavit that we provided shows that, look, this has been used exclusively. Your Honor mentioned something about the pool. I don't believe the pool was installed until much later. And that sort of construction matter I don't think has any bearing on this case because it's truly the location. I bring up construction maybe because I had some background in construction, but the gravel was probably used by the equipment to get into and out of the property when it was built. I understand, and I'm familiar with the construction on that regard, too. But if you look at the survey of the Dyes home, you'll see that the Dyes driveway is gravel. It's gravel, and it has, I believe, wood pilings as the edge. So this is a wooded neighborhood, but it is still a neighborhood. It's not vacant land or anything like that. And in terms of jointer, I think that case really looked at, like, the meadow and trees and what was there because they didn't have as definitive of a line as we have. If you look, a couple of the other cases, I believe it is the Kitchens case. The Kitchens case specifically talked about a driveway, and the court stated on that one that actually the driveway itself, which covered track day and served the garage, was an improvement indicated to the persons residing in the immediate neighborhood that the owners of the garage and the Heights had the exclusive management and control of the land underneath the driveway. The existence of these improvements, the driveway plus the garage beside the house, was sufficient to constitute possession. That's what we have here. And I guess my point in saying that the line of asphalt is so definitive is we're not asking for, like, an additional stretch of grass or something that's adjacent to that driveway. The adverse possession claim that we're making here and that the court ruled upon was that, look, it goes up to the asphalt line, and that's clear as day. That's clear on the record. That's the only record evidence that we have. And I believe, as the court has indicated, that we have the elements here, that it's open and notorious, that there's no one that's the rest of the neighborhood that they would go by would even consider that that driveway and the land below it belonged to anyone but the Schroeders and the people who have occupied that house. And so I think it's covered there. I think there's two reasons. What about the defendant's argument that the record does not disclose the use or possession of the property between 1995 when the Zacharies sold it and 2008 when the Schroeders survey was done? Sure. I think the issue with that is during that time period, did possession change? Did somehow the property, was it used as something other than the driveway? And the record evidence shows that, no, it wasn't. The driveways remained in that position. It would be different if somebody had bought the house, had put in a different driveway, that suddenly that access to the main garage had changed, but it hasn't. Was that argument made in the trial court? That argument was not made in the trial court. And there's no – I went back and I looked at the appellant's brief. The appellant mentions what the appellee argues, but even in his brief that wasn't made in the appellant's brief and it wasn't brought up until the reply brief. That leads to a procedural issue that I think the appellant loses both on substantive matters and procedural matters. This case came to you on a 304A language from an order that both granted the adverse possession for the Schroeders, but it also denied the ejectment claim of the plaintiffs. There's nothing in their brief as to the denial of the ejectment claim. There's no arguments that have been made here today, but yet that summary judgment denying it was a final order, was indicated as 304A language, and – It was left to be adjudicated. Right. There's nothing left to be adjudicated in this case. So there was a vestigial 304A finding? Well, there's still a count against the former attorneys, right? There's still a count against the former attorneys and as – Possibly the title company too? The title company was dismissed. They were initially involved, but I believe, and this isn't my case to make,  if there hasn't been a decision on this piece here, then the issue isn't right as to whether the title company has any damages that they could be on the hook for. So that's where procedurally I believe the title court matter is. If the title company didn't show it as an exception to their title, I don't know why they wouldn't remain in. I'm not here to argue for – It wasn't essentially the title company that insured the 10 feet or whatever by not making an exception. I worked for the title company for 14 months. There's been a lot of change since then. A lot of change, yeah. They're now insuring bitcoins. But the point is, is that the title company, if they were doing their job, should have seen to it that the survey showed that there was compliance on the north end. My clients weren't involved in terms of the sale to the Schroeders, and we have no counterclaims that are against the title company or anything. It doesn't matter. So I'm, I guess, not prepared and don't believe I have truly any standing to speak on title company issues in that regard, Your Honor. Other than this appeal, it was presented on summary judgments, was it not? It was entered on cross-summary judgments, and the whole purpose of both the plaintiffs and the defendants filing a cross motion for summary judgment was to tee the issue up, was to say that there are no questions of fact, was to seal the discovery. Discovery's over. There's nothing else that could be done, that would be done, that would be presented. So basically this is all about a question of law? Correct. Absolutely. And what elements of adverse possession are in contention? I don't believe any elements are in contention. I believe that throughout the briefs, the plaintiffs have admitted as to certain elements. They've admitted in terms of the continuous nature. They've admitted as to under a claim inconsistent with the true honor. The only argument that's being made by the appellants has to do with the knowledge issue, and knowledge is just not a part of the elements of adverse possession under current Illinois law, under the law of the Illinois, the knowledge of the adverse possessor. That you're trespassing. Yes. There's continuous, there's hostile adverse, there's actual, there's open notorious and exclusive, there's under a claim inconsistent with the true owner, and then if you want to have an element, you have to prove that there was an exact location of the boundary line. None of those have anything to do with any bit of knowledge. So really what we're deciding is whether or not knowledge or lack thereof of a trespass in the property in question is a legal element to be determined in so far as sustaining a cause of action in adverse possession. I would respectfully suggest that that isn't even something that's before the court, because the Supreme Court has already decided that. I said I would respectfully suggest that that's not even an issue that's before the court, because the Illinois Supreme Court has already set forth these are the elements of adverse possession, and I don't think there's any other. What were you talking about during the first 20 minutes? Well, I don't know. In terms of the first 20 minutes of the appellant's argument. I thought we were talking about whether or not knowledge or lack thereof of being a trespasser is a factor, and I thought we were told, the panel was told, that Joyner suggested that that wasn't the law, but the law may have been contrary prior to Joyner. I'm familiar with how the law is right now, Your Honor, and my argument to the court is that everything that the appellant is resting on in terms of trying to bring knowledge in here isn't appropriate and is not a part of the element of adverse possession. Would you at least corroborate or deny what I just told you? I thought the discussion in the first 20 minutes. Oh, I believe that that is absolutely the appellant's argument. I just don't believe that it's in accordance with Illinois law. Okay. Did the timer go off? The timer didn't go off, but I have no problem yielding the remainder of my time unless you have other questions. Questions? The procedure is if the bell goes off, I ask if we have other questions. I thought I heard a bell sound. That's okay. It's not a TKO if you don't hear the bell. But in any event, if the bell rings, then I ask about other questions, the point being that it makes a lot of sense to ask all the questions we want answered, assuming that we are competent and know how to ask relevant and material questions. I would go further and say that that's a presumption, not even an assumption. Do you have any questions? No. Why not a lease? Why not what? Why not a lease? Why not a lease? I don't know to what extent any sort of settlement discussions are appropriate to share. I'm only referring to the argument that was made in the trial court at the very end. It was not fled, but it was at the end of the argument. In this regard, there were discussions and attempts to, whether it was a ground lease or something other that would have circumvented and not required all the litigation that has occurred. I believe that the plaintiff's position would have necessarily found themselves before this court again, just with a different landowner. Thank you, sir. Thank you, Your Honors. Mr. Graham, you may proceed with rebuttal. Well, I don't have much to say except that I think that counsel reads the rule in Joyner too broadly. He's saying that it was more sweeping than what it did. What Joyner actually did was set out when knowledge is required and when you can get adverse possession without knowing you're getting it. And I don't know, they went into it in quite a bit of detail and explained why they were changing the common law rule for Illinois. So with that, I'll just have to rest. I think I've said everything that we can say here. Okay. Any other questions? No. Thank you, sir. All right. Thank you. Thank you, gentlemen. We're done with the call. Court is adjourned. Dispositions will be rendered at time. Court is adjourned.